UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Rachel H., | No. 22-cv-1634 (JRT/DLM) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Kilolo Kijakazi,<br>Acting Commissioner<br>of Social Security, | |
| Defendant. | |

---

Pursuant to 42 U.S.C. § 405(g), Plaintiff Rachel H. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). This matter is before the Court on the parties' cross-motions for summary judgment. (Docs. 10–12 (Plaintiff's motion and supporting pleadings), 15–16 (Commissioner's motion and supporting pleadings).) The case has been referred to the undersigned magistrate judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and District of Minnesota Local Rule 72.1. For the reasons which follow, the Court recommends that Plaintiff's motion for summary judgment be denied, and that the Commissioner's motion be granted.

## PROCEDURAL BACKGROUND

On March 5, 2019, Plaintiff filed for Supplemental Security Income ("SSI"), with a protective filing date of January 25, 2019. (Tr.[1] at 302–13.) Her claim was denied initially (Tr. at 185–88), and upon reconsideration (Tr. at 200–02). Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on the matter on June 7, 2021. (Tr. at 203–05 (Appeal), 50–82 (Hearing Transcript).) Plaintiff was represented by counsel at the hearing and testified on her own behalf. (Tr. at 53, 63–78.) A vocational expert also testified, opining that there were jobs in the national economy that were suitable for a person with limitations similar to Plaintiff's. (Tr. at 78–81.)

On June 30, 2021, the ALJ issued a decision finding that Plaintiff was not disabled. (Tr. at 9-44.) On April 19, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision final and subject to judicial review. (Tr. at 1-3.) Plaintiff timely and properly filed this action in district court. (Doc. 1.)

## STATUTORY AND REGULATORY FRAMEWORK

An ALJ is required to analyze claims like Plaintiff's under the five-step sequential process laid out in 20 C.F.R. § 416.920(a)(4) for evaluating disability claims. Step one of this process involves determining whether a claimant is engaged in substantial gainful activity. If not, the ALJ must next decide (in step two) whether the claimant's impairments

---

[1] The Commissioner filed the consecutively-paginated transcript of the administrative record on August 24, 2022. (Docs. 8 (Part 1), 8-1 (Part 2).) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the cited document.

2

are severe, and of a duration of least 12 months. At step three, the ALJ determines whether the claimant's impairments are severe enough to equal a listed impairment. If so, the claimant is considered disabled without further inquiry. If not, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), and find (at step four) whether the claimant can still do their past work given their limitations. Finally, if the ALJ concludes a claimant cannot perform their prior work, step five requires the ALJ to determine whether they can do other work considering their RFC, age, education, and work experience. 20 C.F.R. § 416.920(a)(4)(i)–(v), (d)–(e).

This Court reviews the ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision was infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1138, 1154 (2019) (internal quotations omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1090 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to determine whether it contains sufficient evidence to support (or detract from, as the case may be) the ALJ's conclusion. *Id.*; *Grindley v. Kijakazi*, 9 4th 622, 627 (8th Cir. 2021). Where substantial evidence supports the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089. Where a claimant asserts that the ALJ committed a legal error, this Court

reviews de novo. *Cf. Austin v. Kijakazi*, 52 F.4th 723, 727–29 (8th Cir. 2022).

Plaintiff's arguments for reversal distill down to essentially three contentions: (1) that substantial evidence did not support the ALJ's finding that her migraines, bilateral knee problems, and bilateral hand tremors were not "severe," as that term is used in the context of disability claims; (2) that the ALJ improperly discounted conclusions from a July 9, 2019 consultative medical examination conducted by Dr. A. Neil Johnson; and (3) that the ALJ's RFC findings understated Plaintiff's mental and physical limitations.

## ANALYSIS

### I. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S CONCLUSIONS ABOUT THE SEVERITY OF PLAINTIFF'S AILMENTS

As referenced above, step two of the SSI evaluative process requires the Commissioner to determine whether Plaintiff's impairments are "severe." 20 C.F.R. § 416.920(a)(4)(ii). Severe impairments are those which, alone or in combination, "significantly limit[]" a claimant's "physical or mental ability to do basic work activities." 20 C.F.R. § § 416.920(c). It is the claimant's burden to establish severity. *Kirby v. Astrue*, 500 F.3d 705, 708 (8th Cir. 2007).

Plaintiff takes issue with the ALJ's findings that her migraine headaches and knee problems were not severe, asserting that the ALJ was wrong to conclude Plaintiff had not sought ongoing medical attention for those ailments. (Doc. 11 at 23.) According to Plaintiff, her primary care physician, Dr. Laura Hase, "treated all of Plaintiff's medical conditions, including her chronic migraines and bilateral knee problems." (*Id.* at 24.)

4

Having reviewed the entire administrative record, the Court finds that substantial evidence supports the ALJ's conclusion on migraine and knee problems. As Plaintiff notes, she saw Dr. Hase for migraines in April 2019, and was scheduled for a follow up appointment a month later. (Tr. at 679, 683–84.) At that May 2019 follow up appointment, the only mention of migraines was in Plaintiff's medical history; it was not listed in Plaintiff's History of Present Illness ("HPI"). (Tr. at 716–19.) Plaintiff kept seeing Dr. Hase monthly through the rest of the year, but, again, there is scant mention of either her migraines or knee problems. (*See, e.g.*, Tr. at 711–15 (June 2019 appointment); Tr. at 706–09 (July 2019 appointment); Tr. at 702–05 (August 2019 appointment); Tr. at 698–01 (September 2019 appointment); Tr. at 694–97 (October 2019 appointment); Tr. at 689–93 (November 2019 appointment).)

The same is true for Plaintiff's knee pain. Records of Plaintiff's monthly appointments with Dr. Hase, her primary care doctor, simply do not reveal any disabling knee problems. (*See generally* Tr. at 679–19.) Indeed, in April 2019, Plaintiff told Dr. Hase that she walked regularly. (Tr. at 716.) Around the same time, Plaintiff told another medical provider that she enjoyed being active, and usually walked about 7.5 miles a day. (Tr. at 685–88.) It was not error for the ALJ to find Plaintiff's knee problems to be not "severe," as defined by relevant SSA regulations.

Finally, Plaintiff asserts that the ALJ disregarded her bilateral hand tremors entirely, resulting in an incomplete analysis of her disabling symptoms. (Doc. 11 at 25.) It is true that the ALJ did not appear to address Plaintiff's bilateral hand tremors directly. It is

5

unclear if this was a mere oversight,[2] or if the ALJ simply believed that the symptomology of Plaintiff's bilateral hand tremors was already accounted for given the findings that Plaintiff suffered from the severe impairments of carpal tunnel syndrome and osteoarthritis of carpometacarpal ("CMC") joints. (Tr. at 16, 22–23.) While a more complete discussion is preferable, "a deficiency in opinion-writing is not a sufficient reason for setting aside an administrative finding where the deficiency had no practical effect on the outcome of the case." *Senne v. Apfel*, 198 F.3d 1065, 1067 (8th Cir. 1999).

While the ALJ may not have addressed Plaintiff's complaints of bilateral hand tremors as directly as she desired, the RFC included limitations that accounted for them. Plaintiff was limited to light work, but with further limitations that would prohibit frequent handling, fingering, or reaching, bilaterally. (Tr. at 21.) Additionally, Plaintiff was not to be exposed to vibrations or handheld power tools. (Tr. at 21.) These limitations appear tailored to Plaintiff's bilateral hand afflictions. Whether the ALJ specifically identified bilateral hand tremors as an issue is immaterial when the RFC's limitations nonetheless addressed the disabling symptoms. *Accord Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (Plaintiff "must provide some indication that the ALJ would have decided differently if the error had not occurred"); *Vicky R. v. Saul*, No. 19-cv-2530 (ADM/ECW), 2021 WL 536297, at *11 (D. Minn. Jan. 28, 2021) ("[T]he prevailing view . . . has been that an error

---

[2] The ALJ did note that in February 2020, Plaintiff saw a rheumatologist and reported difficulties with fine motor activity, including braiding her daughter's hair, writing, cooking, and using utensils. (Tr. at 24.) These limitations are consistent with those Plaintiff identified in her pre-hearing brief (Tr. at 421), casting some doubt on the suggestion that the ALJ ignored the effects of Plaintiff's hand problems.

6

at step two may be harmless where the ALJ considers all of the claimant's impairments, regardless of whether they were found severe or non-severe, in the evaluation of the claimant's RFC."), *R. & R. adopted*, 2021 WL 533685 (D. Minn. Feb. 12, 2021) (collecting cases).

## II. THE ALJ DID NOT ERR IN WEIGHING PLAINTIFF'S JULY 9, 2019 CONSULTATIVE MEDICAL EXAMINATION

Plaintiff next argues that the ALJ improperly discounted a portion of a state agency medical evaluation conducted by Dr. A. Neil Johnson on July 9, 2019. In that evaluation, Dr. Johnson documented that Plaintiff reported suffering from knee pain at a five or six out of 10 scale. (Tr. at 821.) The ALJ noted this complaint, but described it as a subjective symptom report rather than a medically-determinable impairment. (Tr. at 24.) According to Plaintiff, it was error for the ALJ not to more thoroughly analyze the knee-pain aspect of Dr. Johnson's evaluation.

Because Plaintiff filed her claim on January 25, 2019, 20 C.F.R. § 416.920c governs how an ALJ evaluates prior administrative medical findings of the state agency providers. *See Andrew H. S. v. Kijakazi*, No. 20-cv-1553 (SRN/HB), 2022 WL 409954, at *9 (D. Minn. Jan. 24, 2022), *R. & R. adopted*, 2022 WL 409951 (D. Minn. Feb. 10, 2022) (discussing that 20 C.F.R. § 416.920c applies to the consideration of prior administrative medical findings for SSI claims filed on or after March 27, 2017).[3] The regulation requires that an ALJ consider several factors, but prioritize the factors of supportability and

---

[3] "For claims filed on or after March 27, 2017, the rules in this section apply. For claims filed before March 27, 2017, the rules in § 416.927 apply." 20 C.F.R. § 416.920c.

consistency as the most important. 20 C.F.R. § 416.920c(a), (b)(2). Provided that the ALJ's reasoning is sound and supported, they may "accept some, but not all, of a medical opinion." *Austin v. Kijakazi*, 52 F.4th 723, 729 (8th Cir. 2022).

Dr. Johnson conducted a comprehensive medical evaluation of Plaintiff in connection with her SSI application. (Tr. at 815–21.) During her interview with Dr. Johnson, Plaintiff stated she had pain in her knees, walked with an antalgic gait, and had difficulty squatting. (Tr. at 815–16.) Plaintiff had normal-range flexion in her knees, although with some pain. (*Id.*) Ultimately, Dr. Johnson concluded that Plaintiff suffered from knee pain, which Plaintiff reported to be at a degree of five or six out of ten. (Tr. at 819.)

Plaintiff complains that the ALJ did not follow § 416.920c's evaluative process in describing Dr. Johnson's knee-pain diagnosis as a subjective symptom report rather than a medically determinable impairment. But the ALJ was right: Dr. Johnson's diagnosis *was* based on Plaintiff's own description of her symptoms. (*See* Tr. at 819 (concluding Plaintiff suffered from knee pain based on her self-report). A "medically determinable impairment" is distinct from (and usually the cause of) pain. *Accord* 20 C.F.R. § 416.929(b) ("Medical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques, must show the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities *and which could reasonably be expected to produce the pain or other symptoms alleged*." (emphasis added).) It was unnecessary for the ALJ to engage in the multi-factored analysis set forth

8

in § 416.920c to simply observe that pain is a symptom and not a medically-determinable impairment.

### III. SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S DETERMINATION OF PLAINTIFF'S RFC

Plaintiff also contends the ALJ's conclusions about her RFC were not supported by substantial evidence because they understated the severity of both her physical and mental impairments. "The ALJ is responsible for determining a claimant's RFC, a determination that must be based on medical evidence that addresses the claimant's ability to function in the workplace." *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). But the RFC is not based on medical evidence alone; it is based on all record evidence, including observations of medical professionals and a claimant's description of their own limitations. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1024 (8th Cir. 2002).

#### A. Substantial Evidence Supports the ALJ's Determination of the Severity of Plaintiff's Mental Impairments

In evaluating the limitations that a claimant's mental impairments impose, an ALJ is directed to consider four broad functional areas: (1) the claimant's ability to understand, remember, or apply information; (2) the claimant's ability to interact with others; (3) the claimant's ability to concentrate, persist, or maintain pace; and (4) the claimant's ability to adapt or manage oneself. 20 C.F.R. § 416.920a(c)(3). The ALJ is required to rate the degree of a claimant's limitation in each functional area based on a five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. § 416.920a(c)(4); *see also* SSA POMS DI 34001.032(F)(2), https://secure.ssa.gov/poms.nsf/lnx/0434001032 (last visited June 7,

2023) (describing the distinctions between each point on the severity scale in the Social Security Administration Program Operations Manual System ("POMS")).

Plaintiff takes issue with three of the ALJ's ratings. First, Plaintiff complains that rating her as having only a mild limitation in the ability to understand, remember, or apply information reflected a misconstruction of the record. Specifically, Plaintiff asserts that the fact she had been receiving adult rehabilitative mental health services ("ARMHS") for years shows that she had a more significant limitation. And, as Plaintiff notes, the ALJ's decision stated Plaintiff had *not* been receiving personal care assistance or targeted case management in determining she had a mild limitation, although the ALJ acknowledged elsewhere that Plaintiff had an ARMHS worker to help with living and social skills. (Doc. 11 at 26–27; *see also* Tr. at 19, 32.)

Plaintiff's argument proves too much. Clearly, the ALJ knew she had an ARHMS worker and had been engaged with her worker for several years—the ALJ's decision says so. (Tr. at 32.) "The Eighth Circuit instructs lower courts to 'harmonize statements where possible,' and to avoid nitpicking when reviewing ALJ determinations." *Tasha W. v. Berryhill*, 17-cv-4933 (KMM), 2019 WL 1170666, at *3 (D. Minn. Mar. 13, 2019) (citing *Chismarich v. Berryhill*, 888 F.3d 978, 980 (8th Cir. 2018)). Given the ALJ's lengthy description of the duration and character of services Plaintiff was receiving from her AHRMS worker, it is simply unreasonable to conclude the ALJ did not consider the breadth of those services in assessing Plaintiff's limitations.

But even assuming that there was some internal inconsistency between the ALJ's recognition that Plaintiff had an AHRMS worker and the ALJ's statement that Plaintiff did

not receive personal care assistance, in this case such an inconsistency is too granular to permit the Court to reverse. Harmonizing statements, as the Eighth Circuit requires, means more than a mechanical line-by-line exercise. Rather, the Court's task is to determine whether substantial evidence supports the ALJ's conclusions, employing the deference that attaches to such a restrictive standard of review. *Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021). The ALJ's decision detailed the many characteristics of Plaintiff's life which led the ALJ to conclude she was only mildly limited in her ability to understand, remember, or apply information. Most importantly, in her SSA Function Report, Plaintiff described herself as the primary caretaker for her autistic daughter, doing "everything for her." (Tr. at 357.) Among other things, Plaintiff prepared all meals, cared for her daughter's cat, cleaned, washed dishes, and did laundry. (Tr. at 357–58.) In her hearing, Plaintiff also said she drove her own car to her and her daughter's appointments, went shopping, and managed her daughter's distance learning protocol. (Tr. at 63–78.) The ALJ detailed these activities and more. This amounts to substantial evidence supporting the ALJ's mild-severity limitation.

It is these same activities that support the ALJ's determination that Plaintiff had only a mild limitation in her ability to adapt or manage herself. The question is not whether Plaintiff or the Court believes the record would support a more significant limitation finding. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006). The question is simply whether the record adequately supports the ALJ's conclusions. *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007). With the significant evidence of Plaintiff's ability to care for and

11

manage herself and her family, the Court cannot find error in the ALJ's determination that she was not more than mildly limited in this area.

Finally, Plaintiff complains that the ALJ found only a moderate limitation in her ability to interact with others, because in her Function Reports she stated she only left the house a couple of times per week. (Tr. at 356–63, 373–80.) At her hearing, however, Plaintiff testified that over the past month she had gone out of the house for appointments or errands "probably at least 20, 25" times. (Tr. at 63.) She testified that she did not like leaving her house, but there was no suggestion that she was so limited that she missed appointments or errands. Indeed, the consistency of Plaintiff's appointments with Dr. Hase and her other providers suggests just the opposite. None of this is to say that Plaintiff's is not suffering from mental impairments, or that she is not at all limited in her ability to interact with others. But the Court cannot conclude that the evidentiary record would *only* support a finding that this limitation was marked or extreme. *See* SSA POMS DI 34001.032(F)(2), *supra*. A finding of moderate limitation is supported by substantial evidence, and thus cannot be disturbed.

### B. Substantial Evidence Supports the ALJ's Determination of Plaintiff's Physical Limitations

The ALJ accepted that Plaintiff had several severe physical impairments, including carpal tunnel syndrome and osteoarthritis of the CMC joints; obesity; fibromyalgia; chronic pain syndrome; and spine disorder. (Tr. at 16.) And the ALJ's RFC determination included a number of significant limitations based on these physical impairments, including restrictions on climbing, crouching, kneeling, stooping, and handheld work. (Tr. at 21.) But

Plaintiff contends the ALJ erred nonetheless, primarily by not relying more heavily on historical medical opinions that, according to Plaintiff, would have supported further restrictions.

A little context is illuminating, and dispositive. The two medical opinions that Plaintiff suggests were entitled to greater weight are the May 19, 2016 consultative evaluation by Dr. Johnson[4] (found at Tr. 1649–54), and a June 21, 2017 RFC opinion from Dr. Hase (found at Tr. 429–33). These assessments were part of Plaintiff's *prior* application for SSI on March 21, 2016. (*See generally* Tr. at 116–39.) Both assessments appear to have been admitted and considered as part of the record for Plaintiff's March 21, 2016 application. (Tr. at 137–38.) In fact, the ALJ in Plaintiff's prior proceeding assigned little credit to the opinions of either Dr. Johnson *or* Dr. Hase. With respect to Dr. Johnson, the prior ALJ gave it "little weight" and found it "overly restrictive." (Tr. at 127). As for Dr. Hase's opinion, the prior ALJ found it "entirely inconsistent with the actual physical findings" and "claimant's good daily activities, including her ability to walk several miles and care for her special needs child." (Tr. at 130.)

It is true that historical medical information can provide important insights into a claimant's current condition. But here, both medical sources provided *current* opinions and assessments of Plaintiff's condition—Dr. Johnson was called upon (again) to render an agency evaluation of Plaintiff for her current application, (Tr. at 814–21), and Dr. Hase

---

[4] This is the same Dr. Johnson who conducted a consultative evaluation of Plaintiff on July 9, 2019. (Tr. at 814–23.)

continued to serve as Plaintiff's current primary care doctor, (Tr. at 679–719). Plaintiff does not explain how it was error for the ALJ to rely on each medical source's most current assessment rather than look to the state of affairs several years ago.

There is another flaw in Plaintiff's argument. Principles of res judicata apply to social security proceedings.[5] *Robbins v. Secretary of Health & Human Svcs.*, 895 F.2d 1223, 1224 (8th Cir. 1990) (per curiam). "If res judicata applies, 'the medical evidence from the initial proceeding cannot subsequently be reevaluated.'" *Hillier v. Social Sec. Admin*, 486 F.3d 359, 365 (8th Cir. 2007) (quoting *Bladow v. Apfel*, 205 F.3d 356, 360 n.7 (8th Cir. 2000)).

It is of course true that in the context of a progressive disease or degenerative condition, an ALJ may consider historical evidence along with new evidence to determine whether a claimant is disabled. *Hilliard*, 486 F.3d at 365. But that is not what Plaintiff asks for here. Nor could she, since the ALJ did consider the historical evidence. Rather, Plaintiff complains that the ALJ did not give *more* weight to the 2016 and 2017 medical opinions—the same opinions that the prior ALJ discredited. Today's ALJ cannot, and should not, dismantle the findings of yesterday's, absent some changed circumstance or compelling reasons to do so. Plaintiff has identified none. The ALJ in Plaintiff's prior benefits proceeding placed little weight on the 2016 and 2017 medical opinions of Drs. Johnson and Hase, and it was not error for the ALJ in Plaintiff's current proceeding to follow suit.

---

[5] The Commissioner may waive the defense of res judicata by reopening the claimant's prior application. *Hillier v. Social Sec. Admin*, 486 F.3d 359, 364 n.2 (8th Cir. 2007). Here, the ALJ denied reopening, (Tr. at 13), and Plaintiff has not sought review of that decision.

## RECOMMENDATION

Based on the above findings, as well as the files, records, and proceedings above,

**IT IS RECOMMENDED** that:

1. Plaintiff's Motion for Summary Judgment (Doc. 10) be **DENIED**; and

2. Defendant's Motion for Summary Judgment (Doc. 15) be **GRANTED**.

DATED:  June 12, 2023

  *s/Douglas L. Micko*
  DOUGLAS L. MICKO
  United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.

A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).